UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| CHARLES COLEMAN DAVIS, JR., | CIVIL ACTION NO. 5:19-107-KKC |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| JOSEPH BAKER and PHILLIP JOHNSON, | |
| Defendants. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendants' joint motion to dismiss Plaintiff's complaint or, in the alternative, a joint motion for judgment on the pleadings. Plaintiff Charles Coleman Davis, Jr. brought suit for damages under 42 U.S.C. § 1983, alleging violations of his Constitutional rights; he also alleges violations of state law. (DE 1.) Defendants Joseph Baker and Phillip Johnson filed their joint motion pursuant to FED. R. CIV. P. 12(b)(6) and 12(c). (DE 8.) For the reasons stated below, the Court grants Defendants' motion.

## Background

In the early morning of March 20, 2018, Defendants – officers with the Lexington-Fayette Urban County Government Police Department – were patrolling an area in response to recent complaints of possible drug and prostitution activity. (DE 1 at 2-3.) Running a check on the registration number for Plaintiff's black Dodge Charger, Defendant Baker learned that the number was assigned to a *white* Dodge Charger, and the officers stopped the vehicle. (DE 1 at 3.) During the traffic stop, Defendants reportedly smelled marijuana and conducted

1

a search of the vehicle, finding 2.5 grams of marijuana and a 9-millimeter handgun. (DE 1 at 3.)

Defendants arrested Plaintiff, and he was later indicted by a Fayette County grand jury for possession of a firearm by a convicted felon, carrying a concealed deadly weapon, possession of marijuana, and being a persistent felony offender in the first degree. (DE 1 at 3.) On October 24, 2018, the Fayette County Circuit Court granted Plaintiff's motion to suppress the evidence that was found during the traffic stop. (DE 1-4.) Plaintiff had argued that Defendants did not have reasonable suspicion that criminal activity had occurred, or was about to occur, sufficient to justify stopping his vehicle; he did not commit a traffic violation, it is not illegal to change a vehicle's paint color, and the law does not require notification to the state when a vehicle is repainted. (DE 1 at 4.) Plaintiff spent approximately 205 days detained in the Fayette County Detention Center while his motion to suppress was pending. (DE 1 at 4.) Plaintiff was also on probation at the time of the traffic stop, and the Fayette County Circuit Court revoked his probation and sentenced him to five years in prison. (DE 1 at 4.)

Plaintiff filed suit in this Court on March 18, 2019. (DE 1.) The complaint alleges that the seizure, search, and arrest violated Plaintiff's Fourth and Fourteenth Amendment rights. (DE 1 at 5-6.) He seeks damages and other relief for those violations pursuant to 42 U.S.C. § 1983. (DE 1 at 5-8.) Plaintiff also brings state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and malicious prosecution. (DE 1 at 6-7.) Defendants filed their joint motion on April 24, 2019. (DE 8.) Defendants argue that Plaintiff's federal law claims are barred by their qualified immunity and *Heck v. Humphrey*, 512 U.S. 477 (1994) (DE 8 at 1, 16-17),[1] and that the Court should dismiss the state law

---

[1] Because Plaintiff is not challenging the validity of the revocation of his probation and is not seeking damages for that revocation (DE 12 at 15), the Court will not address this argument.

claims either on the merits or because Plaintiff has failed to meet his pleading burden (DE 8 at 1).

## Analysis

**I. Standard**

A party may move for judgment on the pleadings after the pleadings have closed. FED. R. CIV. P. 12(c). The standard of review for a Rule 12(c) motion for judgment on the pleadings and a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted are the same.[2] *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). For the purposes of either motion, the well-pleaded allegations of the complaint must be taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)); *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

To survive a Rule 12(c) or Rule 12(b)(6) motion, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz*, 592 F.3d at 722 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "A legal conclusion couched as a factual allegation," however, "need not be accepted

---

[2] "A party can move for judgment on the pleadings after the filing of the complaint and answer." *Wilson v. United States Air Force*, No. 5:08-CV-324-JMH, 2010 WL 11526864, at *1 (E.D. Ky. Oct. 22, 2010) (citation and internal quotation marks omitted). Defendants filed separate answers to the complaint on the same day that they filed their joint motion. (DE 9; DE 10.) Although Rule 12(b) generally "does not permit the concurrent filing of a motion to dismiss and an answer," this Court has previously held that it will remedy this sort of "procedural deficiency by construing a post-answer motion to dismiss as a motion for judgment on the pleadings under Rule 12(c)." *Gambrel v. Knox Cty., Ky.*, No. 17-CV-184-DLB, 2018 WL 1457296, at *2-*3 (E.D. Ky. Mar. 23, 2018). Defendants' answers and joint motion having been filed on the same day, albeit in separate documents, the Court will construe this motion as one for judgment on the pleadings. *But see Ebenisterie Beaubois Ltee v. Marous Bros. Const. Inc.*, No. 02 CV 985, 2002 WL 32818011, at *2 n. 4 (N.D. Ohio Oct. 17, 2002) (construing a motion filed on the same day as an answer as a motion for dismissal under Rule 12(b)(6), but noting that, "[r]egardless, the standard of review for a Rule 12(b)(6) motion is identical to the standard of review for a motion brought pursuant to Rule 12(c).").

3

as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Id.* (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).

## II. 42 U.S.C. § 1983 Claims

Even if Defendants' conduct violated Plaintiff's rights, that alone is not enough for the Plaintiff to secure damages in a § 1983 action. The Court finds that the law which might determine that Defendants violated Plaintiff's Fourth Amendment rights was not clearly enough established to defeat Defendants' qualified immunity claim.

### A. Qualified immunity

42 U.S.C. § 1983 provides "a vehicle for a plaintiff to obtain damages for violations of the Constitution or a federal statute." *Boler v. Earley*, 865 F.3d 391, 401 (6th Cir. 2017). Under the statute –

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

42 U.S.C. § 1983.

However, the law provides government officials with qualified immunity from such actions. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If the law at the time of the conduct "did not clearly

establish that the [official's] conduct would violate the Constitution, the [official] should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Although the procedure "should not be regarded as mandatory in all cases," a court can look to the two-step sequence described in *Saucier v. Katz*, 533 U.S. 194 (2001), to aid its evaluation of an official's qualified immunity claim. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "First, a court must decide whether the facts that a plaintiff has alleged… make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citations to *Saucier*, 533 U.S. at 201 omitted).

The Supreme Court has further clarified that conduct violates clearly established law if at the time of the conduct the "contours" of the right were "sufficiently clear" such that "every reasonable official would [have understood] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations and internal quotation marks omitted). Qualified immunity will apply "if reasonable officials could disagree as to whether the conduct violated the plaintiff's rights." *Thomas v. Cohen*, 304 F.3d 563, 580 (6th Cir. 2002). The law does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741 (citations and internal quotation marks omitted). In other words, the conduct at issue need not have "previously been held unlawful," but "in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also St. John v. Hickey*, 411 F.3d 762, 774 (6th Cir. 2005) ("The critical question is whether the case law has put the officer on notice that his conduct is clearly unlawful."), *abrogated on other grounds by Marvin v. City of Taylor*, 509 F.3d 234, 246 n. 6 (6th Cir. 2007). The Sixth Circuit has instructed that, "[w]hen determining whether a right is 'clearly established,' [the

5

court] must look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within our circuit, and finally to decisions of other circuits." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000) (citation and internal quotation marks omitted).

Defendants "bear the initial burden of coming forward with facts to suggest that they were acting within the scope of their discretionary authority during the incident in question." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992) (citing *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991)). However, a plaintiff has the burden of proving that a defendant is not entitled to qualified immunity and must show that the right at issue is clearly established. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). Assuming that Defendants have shown that they were acting in the scope of their discretionary authority,[3] Plaintiff must establish that Defendants' conduct "violated a right so clearly established that any official in defendants' positions would have clearly understood that they were under an affirmative duty to refrain from such conduct." *Rich*, 955 F.3d at 1095.

### B. *The alleged conduct*

The alleged conduct here is a traffic stop; followed by a search of the vehicle; and finally, Plaintiff's arrest. Each correspond to an individual count in the complaint brought under 42 U.S.C. § 1983. (DE 1 at 5-6.) At issue is whether this conduct violated the Fourth Amendment, which provides a right to privacy:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and

---

[3] Nowhere in the record is it disputed that Defendants were acting within the scope of their discretionary authority.

> particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.[4] Faced "with the insuperable problem of discerning what it means for a search or seizure to be 'reasonable,'" the Court looks to the "growing litany of vague and indeterminate phrases and legal tests" provided in the case law. Barry Friedman & Cynthia Benin Stein, *Redefining What's "Reasonable": The Protections for Policing*, 84 GEO. WASH. L. REV. 281, 284 (2016).

*1. The traffic stop*

Plaintiff argues that "Defendants without probable cause or reasonable suspicion illegally stopped [his] vehicle." (DE 1 at 5.) The Fourth Amendment's "protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest," *United States v. Arvizu*, 534 U.S. 266, 273 (2002), and a traffic stop entails a seizure for Fourth Amendment purposes even if "the purpose of the stop is limited and the resulting detention quite brief," *Brendlin v. California*, 551 U.S. 249, 255 (2007) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)) (quotation marks omitted). The principles of *Terry v. Ohio*, 392 U.S. 1 (1968), "apply to define the scope of reasonable police conduct" during "[a]n ordinary traffic stop." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). "*Terry*, a limited exception to the normal requirements of probable cause, permits a police officer briefly to detain a person or property for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005). In other words, in such brief, investigatory stops, "the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *Arvizu*, 534 U.S. at 273 (citations and internal

---

[4] The right to privacy embodied in the Fourth Amendment is enforceable against the States through the Fourteenth Amendment's Due Process Clause. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

7

quotation marks omitted). The law allows room for "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them," and "[a]lthough an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* at 273-74 (citations and internal quotation marks omitted).

The Sixth Circuit has articulated a two-part analysis for determining the constitutionality of a *Terry* stop:

> First, we determine whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion. We examine the totality of the circumstances in order to determine the reasonableness of the investigatory stop. We may take into consideration the crime level of the area as a contextual consideration… Second, we examine whether the degree of intrusion... was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances. Thus, we must determine (1) if the detention was sufficiently limited in time and (2) if the investigative means used the least intrusive means reasonably available.

*United States v. Davis*, 514 F.3d 596, 608 (6th Cir. 2008) (citations and internal quotation marks omitted).

In determining if Defendants' conduct violated the right to be free from unwarranted investigatory stops, the Court must consider the particular circumstances. When assessing a qualified immunity claim, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201; *see also Ashcroft*, 563 U.S. at 742 ("We have repeatedly told courts… not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." (citations omitted)).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Saucier*, 533 U.S. at 202 (emphasis added). Therefore, the Court must consider that, prior to stopping the vehicle, Defendants learned that its paint color did not match the color in its registration. (DE 1 at 3). Under the *Terry* line of cases, if this evidence, along with the other, "cumulative information available to" Defendants, *Arvizu*, 534 U.S. at 273, did not provide them with "reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur," *Davis*, 430 F.3d at 354, then Defendants violated Plaintiff's rights. If the law clearly establishes this conclusion, such that "the unlawfulness" of the conduct is "apparent," *Anderson*, 483 U.S. at 640, then Defendants are not immune to civil damages.

The parties identify no Supreme Court case law closely on point, and the Court has not been able to independently identify any. However, the facts here are similar to *United States v. Cooper*, 431 F. App'x 399 (6th Cir. 2011). In *Cooper*, officers were "patrolling a high-crime area" when they discovered that a silver Toyota was registered as a *red* Toyota. *Id.* at 400. According to the officers, "in their experience, a discrepancy between a car's actual color

9

and the color recorded on its registration often suggests a stolen vehicle." *Id.* One of the officers testified that on more than 20 occasions he had observed a stolen vehicle bearing the license plate of another vehicle that matches the stolen one. *Id.* at 402. Although the vehicle was not stolen, the officers discovered marijuana and a gun during the investigatory stop, and Defendant was charged with possession of a firearm and ammunition by a convicted felon. *Id.* at 400. After the district court granted Defendant's motion to suppress the evidence, the government appealed to the Sixth Circuit. *Id.* That court held that the officer's testimony "– in conjunction with the color discrepancy and the fact that the officers spotted the vehicle in a high-crime area – suffices to establish 'specific and articulable facts which give rise to reasonable suspicion.'" *Id.* at 402 (quoting *United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009)).

As Plaintiff highlights (DE 12 at 2, 9), *Cooper* has a relevant factual distinction: the officers in that case "noted the frequency of car thefts" at the "particular intersection," 431 F. App'x at 401, whereas in the present case there was no particular suspicion of car theft in the area of the traffic stop. Defendants were patrolling an area in response to "ongoing narcotics and prostitution complaints," but were not specifically investigating car thefts. (DE 1 at 2-3.) Relatedly, Plaintiff also claims that "Defendants in this case did not possess the same amount of experience as the officers in *Cooper* did when it came to car thefts." (DE 12 at 9.) However, these distinctions are insufficient for the Court to ignore that case's probative value. In both instances, the officers were patrolling a high crime area and noticed a vehicle's color discrepancy; in both instances, that discrepancy and the particular location of the vehicle were the primary bases on which the officers claimed a reasonable suspicion of criminal activity. Further, *Cooper* addressed a motion to suppress, and, as discussed above,

Plaintiff faces a more difficult standard here. The Court finds *Cooper* to be persuasive precedent even though it is not perfectly factually analogous.

Further, other courts have similarly found paint color discrepancy to support a lawful traffic stop. In *Smith v. State*, the court held that, upon discovering that the license plate on the defendant's blue and white car was registered to a yellow car, the officer "had reasonable suspicion to believe that [the defendant's] vehicle had a mismatched plate, and as such, could be stolen or retagged;" therefore, the court determined, the officer's "traffic stop was valid and comported with the mandates of the Fourth Amendment." 713 N.E.2d 338, 342 (Ind. Ct. App. 1999). In *Andrews v. State*, the court held that the officer "had a basis for believing the car to be a different color than that listed on the registration, and it was reasonable for him to infer that the license plate may have been switched from another car. Under these circumstances, we cannot say that [the officer] acted on a mere hunch." 658 S.E.2d 126, 128 (Ga. Ct. App. 2008). In *State v. Creel*, the court found that, on the basis of a color discrepancy, "the deputy had a reasonable and articulable suspicion to initiate the stop." No. 38658, 2012 WL 9494147, at *2 (Idaho Ct. App. Aug. 7, 2012) (noting that "fictitious license plates" violate Idaho state law, but that the vehicle also "could have been stolen and the plates were from another" similar vehicle). The court in *United States v. Clarke*, 881 F. Supp. 115 (D. Del. 1995) considered somewhat different facts before coming to a similar conclusion: the court found that the officer "did in fact have an articulable and reasonable suspicion that the driver and passenger of the vehicle were in violation of the law" because when the officer "checked the vehicle's tag number it was revealed that the tag number was registered to a different color car. Such a discrepancy, combined with Officer Sullivan's knowledge that Toyota Camrys are often subject to theft, the vehicle's out-of-state license plate, and the presence of the vehicle in a high crime area is sufficient for Officer Sullivan to stop the car and investigate further." *Id.* at 117.

On the other hand, some courts have decided differently. In *United States v. Rodgers*, the court held that –

> …the color discrepancy and high-crime location, even when considered cumulatively, at best provide a thin basis for reasonable suspicion that the car was stolen. The failure to update a vehicle registration to reflect that a car has been painted is not a citable offense under state or local law; it is also, of course, not illegal to drive in a high-crime area.

656 F.3d 1023, 1027 (9th Cir. 2011). Citing *Rodgers,* the court in *United States v. Campa* noted that a "color discrepancy alone would unlikely be enough to support a stop." No. CR 13-2142-TUC-JAS (JR), 2014 WL 4655436, at *3 (D. Ariz. Sept. 17, 2014). In *State v. Unger*, the court held that "a discrepancy in an automobile's paint color found via a database check… cannot be classified as a reasonable suspicion of motor vehicle theft sufficient to justify a warrantless stop." No. 2016 CA 00148, 2017 WL 2799530, at *3 (Ohio Ct. App. June 26, 2017) (discussing *Schneider v. State*, 459 S.W.3d 296 (Ark. 2015) and *State v. Teamer*, 151 So.3d 421 (Fla. 2014)). In *United States v. Uribe*, the court determined that its "review of the totality of the circumstances here leads us to conclude that no reasonable suspicion of vehicle theft attaches to a completely lawful color discrepancy in the absence of any evidence suggesting otherwise." 709 F.3d 646, 652 (7th Cir. 2013).

Under *Terry* and its progeny, the traffic stop here was at least an arguable violation of Plaintiff's Fourth Amendment right to privacy. Even considering the totality of the circumstances, including the crime level in the area, the Court sees a very "thin basis," *Rogers*, 656 F.3d at 1027, for the reasonable suspicion of theft that supposedly justified the stop. However, the Court finds that "reasonable officials could disagree as to whether the

conduct violated the plaintiff's rights." *Thomas*, 304 F.3d at 580. Reviewing the relevant precedent, the Court does not believe that the case law is sufficiently settled as to place the "constitutional question beyond debate," nor that "every reasonable official would [have understood]" that the conduct here violates the Fourth Amendment. *Ashcroft*, 563 U.S. at 741 (citation and internal quotation marks omitted). Therefore, Defendants' qualified immunity applies to any § 1983 liability arising from the traffic stop.

*2. The search of the vehicle*

Plaintiff argues that Defendants searched his "vehicle without probable cause or any other legal justification." (DE 1 at 6.) But Defendants did have some justification. As Plaintiff's own pleading recounts, Defendants "claimed that they smelled the odor of marijuana coming from the vehicle" before commencing a search. (DE 1 at 3.) Nowhere in the complaint does Plaintiff state that the vehicle did not smell like marijuana, could not have smelled like marijuana, or that Defendants lied about the marijuana smell. However, in his response to Defendants' motion, Plaintiff appears to cast doubt on the facts that he alleged: he asserts that he –

> purposefully used the language "claimed" because the Plaintiff believes that as proof develops in this case, it will be shown that the Defendants could not have smelled a mere 2.5 grams of marijuana [which were] inside a cigarillo package located in the front passenger side door and thus, the Plaintiff and his vehicle were unlawfully searched.

(DE 12 at 12 (emphasis removed).) On a motion for judgment on the pleadings, the law requires that the Court take as true only the "material allegations of the *pleadings*." *JPMorgan Chase*, 510 F.3d at 581 (emphasis added). Plaintiff's response to Defendants' motion is not a pleading. *See* FED. R. CIV. P. 7(a) (identifying the pleadings allowed). Further,

the insinuations which Plaintiff assigns to "claimed," borne of that word's apparently considerable breadth of meaning, are not "reasonable inferences" which must be drawn in his favor. *Gavitt*, 835 F.3d at 640. Because "[a]ssessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings," *id.*, Plaintiff cannot use his response to Defendants' motion to create a factual dispute otherwise absent from the pleadings. Plaintiff cannot escape the facts that he has pled, nor the ways that his complaint might be deficient.

Sixth Circuit law is clear that "detection of a narcotic's odor, by itself, is sufficient to provide probable cause to conduct a lawful search of a vehicle." *United States v. Crumb*, 287 F. App'x 511, 514 (6th Cir. 2008) (collecting cases). Plaintiff's only argument could be that the search was unconstitutional because it originated from an unconstitutional traffic stop. But that would be an improper application of the fruit of the poisonous tree doctrine. *Cf. Shakleford v. Hensley*, No. 12-CV-194-GFVT, 2013 WL 5371996, at *6 (E.D. Ky. Sept. 24, 2013) ("Though [the plaintiff] refuses to style his argument in these terms, he is essentially arguing that the Brolin shotgun may not be used to demonstrate probable cause for the prosecution because it is the fruit of the poisonous tree."). "The fruit of the poisonous tree doctrine is an extension of the exclusionary rule of criminal procedure that 'bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure.'" *Id.* (quoting *United States v. Williams*, 615 F.3d 657, 668 (6th Cir. 2010)). However, this Court and many others have refused to extend the doctrine to § 1983 actions. *Id.* at *7 (holding that "the fruit of the poisonous tree doctrine is inapplicable in the context of a Section 1983 claim"); *id.* at *6 (collecting cases). As this Court has previously explained:

> in *Townes v. City of New York*, the Second Circuit stated, "We find no case in which the doctrine has been successfully invoked

14

to support a § 1983 claim, and we see no reason why it could be." 176 F.3d at 145. In justifying its reasoning, the Second Circuit noted that the fruit of the poisonous tree doctrine is an extension of the exclusionary rule, which has generally been held "to apply only in criminal trials." *Id.* (quoting *Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 118 S.Ct. 2014, 2020 n. 4, 141 L.Ed.2d 344 (1998)). Further, the court found that, like the exclusionary rule, the fruit of the poisonous tree doctrine "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974)). The Second Circuit indicated that the Supreme Court had previously refused to extend the exclusionary rule into non-criminal contexts… In the Second Circuit's view, the fruit of the poisonous tree doctrine that extends from the exclusionary rule should be similarly limited. Additionally, the Second Circuit reasoned that the purpose of the fruit of the poisonous tree doctrine, to deter future unlawful police conduct, would have already been served by suppression of the illegally seized evidence in the criminal trial. Finding the remedy applicable in the civil context would "vastly overdeter police officers" and would "result in a wealth transfer that is 'peculiar if not perverse.'" *Id.* at 148.

*Id.* at *7.

In a civil context, even if the traffic stop were unconstitutional, the marijuana's odor is a legitimate basis for the Defendants' probable cause to search the vehicle. Because the law is clear that "detection of a narcotic's order" is sufficient probable cause for a search, *Crumb*, 287 F. App'x at 514, Defendants' search did "not violate clearly established statutory or constitutional rights," *Harlow*, 457 U.S. at 818. Therefore, Defendants' qualified immunity applies to any § 1983 liability arising from the search.

*3. The arrest*

Plaintiff also argues that "Defendants did not have legal justification to arrest" him. (DE 1 at 6.) "A section 1983 wrongful arrest claimant must prove that the arresting officers lacked probable cause to believe that the suspect had committed the charged crime." *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999). Establishing probable cause sufficient to justify a warrantless arrest "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Moncivais*, 401 F.3d 751, 756 (6th Cir. 2005) (quoting *United States v. Barrett*, 890 F.2d 855, 861 (6th Cir. 1989)) (internal quotation marks omitted).

First, the discussion above, equally applicable here, disposes of any argument (DE 1 at 6; DE 12 at 14) that Defendants lacked a proper basis for the arrest because the initial traffic stop was unconstitutional. That theory does not apply in the § 1983 context. Second, the Court finds that Defendants had sufficient probable cause for the arrest. As the complaint recounts, Defendants found 2.5 grams of marijuana in the vehicle and a 9-millimeter handgun under the driver's seat. (DE 1 at 3.) Under Kentucky law, possession of marijuana is a Class B misdemeanor with a maximum term of incarceration of 45 days, KRS § 218A.1422, and carrying a concealed deadly weapon is at least a Class A misdemeanor, KRS § 527.020. Even if Plaintiff's fiancé was the owner of the vehicle and the gun, and the marijuana was "in the front passenger door compartment out of the reach of the Plaintiff"

16

(DE 12 at 14), "proof that a defendant has possession and control of a vehicle is evidence to support a conviction for constructive possession of contraband found within the vehicle." *Burnett v. Commonwealth*, 31 S.W.3d 878, 880 (Ky. 2000), *overruled on other grounds by Travis v. Commonwealth*, 327 S.W.3d 456 (Ky. 2010); *see also Leavell v. Commonwealth*, 737 S.W.2d 695, 697 (Ky. 1987) ("The person who owns or exercises dominion or control over a motor vehicle in which contraband is concealed, is deemed to possess the contraband."); *Deboy v. Commonwealth*, 214 S.W.3d 926, 929-30 (Ky. Ct. App. 2007) (citing *Burnett* and *Leavell* in a case where a gun was found under the driver's seat). Because Defendants finding the marijuana and the gun in the vehicle provided them with probable cause to believe that Plaintiff had committed a crime, the subsequent arrest did "not violate clearly established statutory or constitutional rights," *Harlow*, 457 U.S. at 818. Therefore, Defendants' qualified immunity applies to any § 1983 liability arising from the arrest.

### III. State Law Claims

The complaint asserts three state law violations, with claims for "Intentional Infliction of Emotional Distress," "Negligent Intentional Infliction of Emotional Distress," and "Malicious Prosecution." (DE 1 at 6-7.) Defendants have moved to dismiss these counts. (DE 8 at 13-16.) In his response to Defendants' motion, Plaintiff states that he "voluntarily dismisses his state law claims of Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, and Malicious Prosecution." (DE 12 at 15.)[5]

Pursuant to Joint Local Rule of Civil Procedure 7.1(c), a party's failure to timely respond to a motion may be grounds for granting that motion. Because Plaintiff has not

---

[5] The Court notes that this is the improper vehicle for a plaintiff to voluntary dismiss individual claims. "A plaintiff who wishes to drop some claims but not others should do so by amending his complaint pursuant to Rule 15." 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2362 (3d ed. 2008).

responded to Defendants' motion to dismiss his state law claims, the Court will grant Defendants' motion.

## Conclusion

Accordingly, the Court hereby ORDERS that:

1) Defendants joint motion for judgment on the pleadings (DE 8) is GRANTED;

2) a judgment will be entered contemporaneously with this order.

Dated November 18, 2019.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY